Lemon, number 134696. You see that when you're ready? Morning, Your Honor. May it please the court. My name is Catherine Evett. I'm an assistant federal public defender in Columbia, South Carolina. When the district court said the following, it ran afoul of the U. S. Supreme Court case U. S. versus Tapia, as well as the Fourth Circuit case U. S. versus Bennett. The district court stated to my client, Cynthia Lemon, when imposing sentence, I cannot imagine what was in your mind that led you to do this again, what you possibly could have been thinking, that you could get away with this. To me, it almost indicates some loss of contact with reality. I don't know whether you received any type of counseling when you were serving your time before. Or, I don't know whether you will be able to this time, but I hope maybe you can, because you have a serious emotional problem that would cause you to behave this way, despite what it cost your children and family. And she summed up by stating, I believe that you need further correctional treatment and some type of evaluation. This is significant, because I never brought Ms. Lemon's mental illness into this supervised release violation hearing. I never suggested that she was mentally ill. I never had her evaluated. I didn't present any type of medical evidence that suggested that Ms. Lemon was mentally ill. Well, is it plain from the transcript that the district court increased the length of her sentence on the basis of the rehabilitation? It appears so, Your Honor. Because doesn't she say, I think in the passage you just read, I'm not sure treatment would do you any good. So it's not, it seems to me it's not clear that she is increasing it to get treatment. She's noting that treatment, if you take advantage of it, might be helpful. Yes, she talked about it several times, and she talked about it more than Ms. Lemon's extensive prior record, or the new criminal conduct, or protecting the public. She seemed to focus on the mental illness aspect. Now, to establish the dreaded plain error, I have to demonstrate, one, that the district court erred, and I submit that she did, in violation of established U.S. precedents of TAPIA. I have to establish that the error was clear, that was plain, which was clear or obvious, and I submit that it was when she talked about the mental illness. And then, the hardest hurdle is, I have to establish that the error affected Ms. Lemon's substantial rights. And I submit that they did in this case, because I asked Judge Curry to consider a sentence of time served, so that Ms. Lemon could care for her four children, who had no one out there to care for them. Her mother was caring for them while she was in the hospital, and the children were even sleeping at the hospital, and just had simply no one out there. So, I was asking for a sentence of time served, which was approximately 30 days, and not considering that sentence, and going all the way up to the statutory max of two years, I submit that it did affect the outcome of the district court proceedings, it was a miscarriage of justice, and it did affect the fairness, integrity, and public reputation of this judicial proceeding. In the alternative, I asked that she sentence her the same as, or no worse than, her co-defendant, who I represented before Judge Curry two weeks prior. And I mentioned that in the transcript, and I asked that she go no higher than a year and a day, and that's what she gave her co-defendant, who committed the exact same new criminal conduct that Ms. Lemon did. And the only- And your submission is that the only reason that she went any higher with Ms. Lemon is because of this need for rehabilitation? Is that your claim? That's the way it looked, Judge Schmatz, because there was virtually no difference in those two cases. And is that what Judge Curry said? Did she distinguish Ms. Lemon from her co-defendant? She didn't. I asked her not to sentence her any more severely than her co-defendant, who did the exact same thing with Ms. Lemon, with these counterfeit checks, and also had three children with no one to care for them. Was the criminal history the same? They both were criminal six. They were. I brought that up, but Judge, the district court did not address it or try to distinguish it, which leads me to believe that the only difference between these two women was her perceived notion that Ms. Lemon was mentally ill and needed to receive mental health counseling this time when she was in the BOP. And I have to ask you, and I really appreciate your being here, Ms. Evatt. When did you reach that conclusion that you just articulated? When I was invited to look at this issue closer. So- I unfortunately did not object. I absolutely appreciate your candor. And I'll tell you, in all honesty, my hat's off to you, because frankly, we don't get a lot of lawyers coming up here saying, your honors, I should have done a better job. And that's what you're here saying in so many words, and I appreciate that, and I respect that. I didn't recognize it, and I didn't object to it. That's clear. Why didn't you recognize it? I didn't hear or recognize it because my client was sobbing on my shoulder. I was trying to write down what the judge was saying, and I was dealing with her and her wailing, and I didn't recognize it. I missed it. You were aware at the time of Tapia? And- I was, your honor. You were? I was. Okay. And it just didn't strike you to say, Judge Curie, hold on a second here. Well, you wouldn't say it that way, of course. But you get what I'm getting at. I mean- I wish I had. I wish I had objected specifically. And you understand that that suggests to me that the atmosphere in the courtroom at the time, because you're a good lawyer, clearly a really good lawyer, and you care about your client. I just have to think that if Judge Curie's tone or demeanor or facial expression, if there was anything about this that suggested that Judge Curie was doing anything other than what Judge Motz suggested earlier she was doing, it's just treating this as, this is what this defendant needs by way of incarceration. I got a feeling you would have spoken up. At the time, it felt more like she was fussing at my client. This was not her- That's the way it sounds to me, reading the record. That was not- She's fussing at her. That was not the person- Not increasing her sentence. Me and Ms. Lemon had been before this district court before. Right. I was the original attorney. It was- And the district court had- This was a gathering of friends. She had put me on notice that she was going to, she was contemplating an upward variance in the original case. So I was prepared for a harsh sentence this time. But I was trying to make the best arguments I could with her children and disparity in sentencing and comparing her to her co-defendant. I was trying to listen to her. I was trying to console Ms. Lemon. And I did not make a specific Tapia objection, which is why I'm here on this dreaded plain error review. Did I see somewhere- She's due for community confinement very shortly. Have you been in touch with her in the last week or two? I have. Her release date is May of 2015. She's going to get community confinement well before that, right? Unfortunately, she's not because- No? She was just indicted federally for the underlying conduct in my case. Oh. So two weeks ago, the U.S. Attorney's Office indicted her with the co-defendant that I spoke about in a Czech conspiracy. Wow. Sometimes the bad news just never stops coming. That's true, Your Honor. Thank you. I'd like to start, really, where you ended up with Ms. Evatt. And I see Ms. Evatt all the time, and I agree. She's a very good lawyer. And I would submit to you that the reason that this issue didn't jump out at her during the hearing is it just wasn't there. Well, what's the difference between her and her co-defendant? LaToya Young and Cynthia Lemon? I'm not exactly sure, but I can tell you this. All that was cited in the appellant's brief was that Ms. Young has three children and Ms. Lemon has four children. But I'm pretty sure there's- That counts against you, an extra child? No, that's exactly what I'm saying, though. That's the only thing that's in the appellant's brief is the count. But if you get into even the arguments that were made during the sentencing, it gets into the fact that Ms. Lemon had four children because Ms. Lemon was out. The care for those children had fallen on the grandmother of the children, who was hospitalized with a significant neck injury. The children would go to school during the day, and then they would be dropped off at the hospital at night to be cared for by the bedridden grandmother while- Because Ms. Lemon was in jail. And so that certainly was not the case with Ms. Young. That's the difference there, is that Ms. Young's children were not being dropped off at a hospital to be cared for by an invalid grandmother. I'm sorry? Where were they being dropped off? On the streets? Ms. Young's children? Yeah. Just because they weren't being sent to the hospital. Well, it must have been a relative or something like that. But I say this, Judge Moss, when you look at the record of what Judge Curry was considering when she sentenced Cynthia Lemon. And in my brief, I even italicized the languages he used, because Judge Curry, I think, very deliberately chose the language that she used in sentencing Ms. Lemon. It's on page 5 of my brief, pages 6 and 7 of the transcript. She says, I have considered, and she walks through and uses the word considered in all the 3553 factors. But she says, you know, I hope that you can get this treatment. I'm going to recommend that you get this treatment. Clearly, the sentence was not being either imposed in the first place or extended by any length of time for the purpose of her receiving mental health treatment in the BOP. As you mentioned, oftentimes during sentencing is when you have a captive, or a judge has a captive audience, and it's a chance to make an impression. It's a chance to perhaps provide some guidance there. And that's exactly what she does. And that makes even more sense if you look at the transcript. And all the argument that went before in the transcript is about her family situation. And, you know, she needs to be allowed to go care for her kids. And Judge Curry is making a very natural reaction to this and saying, well, you don't seem to have much concern for your children. And I think this indicates that you have a problem. But then when it actually comes time to impose the sentence, she doesn't go back to that and say, well, I think you've got a mental problem, and I'm going to give you 24 months to be sure that you can enroll in this particular program at the BOP because that's what you need. She never mentions that again. She just says, I hope and I'm going to recommend. But when she's actually sentencing Ms. Lemon, it's all based on the 3553A factors. And I think that's exactly why it wasn't brought up. And Ms. Lemon and Ms. Young committed the same offense and had the same criminal history and the same potential guideline range. Is that correct? Yes, it is. They were co-conspirators on, you know, and even the case I think that my office has indicted, they're both in that one as well. It's just a pattern that continues. And it was a PSR for this lady's file? Well, here's the thing. And I've talked to Ms. Evan about this before, because initially this was an Anders brief. There wasn't a joint appendix. And even with supplemental briefing, there was no joint appendix prepared. That's right. So we had nothing. Well, I don't want to put words in your mouth or anything, but I believe Ms. Evan checked with the court and the clerk's office at the district court has submitted to this court a comprehensive electronic record. Yeah. Yes, Your Honor. So I believe if the court is interested in looking at it, it is available. Just the way this thing worked its way through the system is not here. Okay. But, you know, I would submit to you that if we go back What is the recommendation in the PSR? Can you tell me that? Well, the supervised release violation, the probation office recommended 24 months. And which was the statutory maximum? Yes, it was up to the guideline range was up to 27 months, but the statutory maximum was 24 months. That's right. So the window is really 21. And do we know from the PSR whether what was recommended with respect to the codefendant? I do not know. But the brief indicates she got 12 months in a day. I know what she got. I wondered what the PSR recommended. The PSR talks about the two. Right. The violation report itself would have had that 21 to 24 month. And then the probation office typically meets with the judge and said, or gives them a piece of paper that says, this is what we recommend. Obviously, from Ms. Lemon, they recommended 24 months. With Ms. Young, I don't recall. I apologize for that. But I do think obviously that's a concern for the court in distinguishing between the two defendants. As I started with, just because a defendant has children, just like another defendant has children, it doesn't mean the family circumstances are identical or comparable. Right. And there's nothing in the record when Judge Curry is sentencing Ms. Lemon that really references mental health counseling or a program in the BOP as the reason why she's imposing the sentence she gets. So if we go back to the record, it's the 3553 factors that are the basis for the sentence. With a recommendation and a hope that she do something constructive with the time that she spends in. OK. With regard to that exchange about, do you want to go to Coleman? Do you want to go to Tallahassee? Does that inform us in any way about whether mental health treatment is more available at Coleman or less available? Typically, when Judge Curry asks that, she's looking for a women's prison that's closer to the family. She basically said, I'm going to send you where you're familiar. Right. I don't see any indication in that exchange, I'm going to send you where you're more likely to get mental health treatment. I agree, Judge Davis. And I don't know exactly where those programs are available. I would think for sure, Butner. But I don't know what's available at those two facilities. And a quick reading indicates that's on the record. OK. Thank you. Thank you. Thank you. Just to follow up with the question about what Ms. Young's guideline range, the transcript states that I said that it was 21 to 27, 21 to 26 months, probably was 27, with 24 months being the cap. In our district, unfortunately, we're not given a copy of the probation officer's recommendation in either a supervised release violation or a pre-sentence report. Those are done in secret to the judge. We never know what probation is recommended. In this case, Judge Curry stated their recommendation for Ms. Lemon on the record. And sometimes Judge Curry does that. The other judges do not. Did you represent the co-defendant? I did not represent her in the original charge. I only represented her in the violation. Did you represent her in the thing that was two weeks before? Yes. Did the district court state what the recommendation was with respect to her? I don't remember her stating that in that case. Okay. And if you don't have any further questions, thank you. And thank you for inviting me. Thank you very much. We will come down and greet the lawyer.
judges: Diana Gribbon Motz, Stephanie D. Thacker, Andre M. Davis